1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GREGORY ERIC EMISON,                    )        NO. CV 12-07747 AGR
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )        MEMORANDUM OPINION AND
CAROLYN W. COLVIN,                      )        ORDER
Commissioner of Social Security,        )
                                        )
                Defendant.              )
                                        )
_____)

        Gregory Emison filed this action on September 13, 2012.  (Dkt. No. 3.)

Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

magistrate judge on October 5, and October 12, 2012.  (Dkt. Nos. 8-9.)  On May

29, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed

issue.  The court has taken the matter under submission without oral argument.

        Having reviewed the entire file, the court affirms the decision of the

Commissioner.

**I.**

## PROCEDURAL BACKGROUND

On June 8, 2011, Emison filed an application for disability insurance benefits, alleging an onset date of September 5, 2010.  Administrative Record ("AR") 28.  The application was denied initially and upon reconsideration.  *Id.*  Emison requested a hearing.  On March 26, 2012, an Administrative Law Judge ("ALJ") conducted a hearing at which Emison, a medical expert ("ME"), and a vocational expert ("VE") testified.  AR 28, 60-84.  On April 4, 2012, the ALJ issued a decision denying benefits.  AR 25-37.  On June 22, 2012, the Appeals Council denied the request for review.  AR 8-12.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2

1

2

**III.**

**DISCUSSION**

3

**A.    Disability**

4    A person qualifies as disabled, and thereby eligible for such benefits, "only

5    if his physical or mental impairment or impairments are of such severity that he is

6    not only unable to do his previous work but cannot, considering his age,

7    education, and work experience, engage in any other kind of substantial gainful

8    work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

9    21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

10    **B.    The ALJ's Findings**

11    The ALJ found that Emison met the insured status requirements through

12    June 30, 2015.  AR 30.  He had the following severe impairments: non-Hodgkin's

13    lymphoma (in remission), status post-right shoulder arthroscopic surgery, right

14    shoulder degenerative joint disease, right elbow pain, and bilateral symmetrical

15    sensorineural hearing loss.  *Id.*

16    Emison had the residual functional capacity ("RFC") to perform light work[1]

17    not involving "sitting, standing and/or walking in excess of 6 hours total per 8 hour

18    workday, lifting/carrying in excess of 10-20 lbs., climbing ladders, performing

19    balancing tasks or working at heights, more than occasional use of his dominant

20    right upper extremity above shoulder level, using his left upper extremity to

21    perform forceful tasks or more than frequent fine and gross manipulative tasks, or

22    performing any work tasks requiring acute hearing or working in noisy

23    environments."  AR 32-33.  Emison is capable of performing past relevant work

24    as a studio artist.  AR 36-37.

25

26

27

28

---

[1] Light work involves lifting and/or carrying no more than 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking for six hours out of an eight-hour workday with regular breaks; pushing or pulling within those weight limits; occasionally climbing ramps, stairs, ladders, ropes, and/or scaffolds; occasionally stooping, kneeling, crouching, and/or crawling; and performing simple repetitive tasks.  20 C.F.R. § 416.967(b).

## C.   Credibility

Emison argues that the ALJ improperly discounted his credibility.[2]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Emison's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 34.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  The ALJ made no finding of malingering, but found that Emison's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment.  AR 34.

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain

---

[2]  Emison does not contend that his shoulder and hearing impairments rendered him unable to work.  JS at 10.  The ALJ acknowledged as much.  AR 34.  Emison focuses on non-Hodgkin's Lymphoma and chemotherapy.  JS at 10.

medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[3] (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ acknowledged that Emison's treatment for non-Hodgkin's lymphoma "may have generally incapacitated [him] from regular work activity for a few months."  AR 35.  However, the statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ did not find a disabling condition for the required length of time.  The ALJ discounted Emison's credibility for three reasons:  (1) the available medical evidence did not support the degree of disability alleged; (2) Emison testified that he ceased working because he was laid off; and (3) there was no indication Emison was unable to perform any activities of daily living.  AR 35.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

As the ALJ noted, the medical records indicate Emison was diagnosed with non-Hodgkin's lymphoma in March 2011.  AR 31, 1184-85.  Emison reported

---

[3]  "Social Security Rulings do not have the force of law.  Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

"feeling well without specific complaints except for perceivable and progressing adenopathy"[4] and reported feeling "slightly fatigued."  AR 1184.  Dr. Arzoo found Emison "remarkably asymptomatic."  AR 1185.  The ALJ found that the medical records indicated Emison was in complete remission within less than a year, August 1, 2011.  AR 34, 383-84, 403.

The ALJ noted that, after remission, "the frequency of the claimant's follow-up chemotherapy treatment is lessened and, by extension, his episodes of post-treatment fatigue and stomach upset."  AR 34.  The ALJ noted that these post-chemotherapy effects were not a chronic condition.  *Id.*  The medical records indicate that, after diagnosis, Emison underwent four monthly cycles of chemotherapy in April, May, June and July 2011.  In September 2011, Emison began treatment with a different provider.[5]  AR 1098.  Emison was to undergo the fifth and sixth monthly cycles of chemotherapy, followed by maintenance Rituxan once every two months for 24 months.  AR 1097-98.  Emison completed the fifth cycle on November 1, which he tolerated well without nausea,[6] and the sixth cycle on December 1.  AR 1069, 1079, 1089.   On December 7 and 10, Emison was treated for nausea or vomiting.  AR 1066, 1072, 1076.  On December 16, Emison was diagnosed with acute bronchitis and  presented with cough, sore throat, sinus congestion, nausea and loose stool.  AR 1061, 1065.  Emison began maintenance Rituxan treatment on January 25, 2012.  He went home "in good condition."  AR 781.  The medical record indicates his next Rituxan dose was set

---

[4]  Adenopathy is the enlargement of a lymph node.

[5]  Emison states that he obtained new insurance.  JS at 9.

[6] When Emison presented with nausea and vomiting for one day on November 17, the doctor found that it was not caused by chemotherapy.  AR 1090.  A note states:  "Pt wants it noted in his medical record that the dog urine smell in front of his apartment makes him nauseous and causes his intermittent vomiting.  Recommend pt to cont filing complaints, possibly move if necessary."  AR 1088.  A few days later, Emison presented with headache, nasal congestion, fever and fatigue.  AR 1079.  The doctor diagnosed a likely virus.  AR 1081.

1    for March 21, 2012. *Id.* At the hearing on March 26, 2012, Emison testified that

2    he had gone to the ER the day before for nausea and weakness. AR 75. The

3    ALJ observed that Emison was able to answer all questions alertly and

4    appropriately.[7] AR 35. This court cannot say that the ALJ's assessment of the

5    medical record is unsupported by substantial evidence. When the records are

6    susceptible to more than one rational interpretation, a court must defer to the

7    Commissioner's decision. *Moncada*, 60 F.3d at 523.

8            The ALJ rejected the representative's argument that Emison would be

9    likely to miss more than two days per month due to treatment-related side effects.

10   As discussed above, Emison was in complete remission less than one year after

11   diagnosis and was undergoing maintenance Rituxan once every two months

12   (January and March 2012 as of the date of the hearing). The ALJ reasonably

13   inferred from the medical records that the side effects were not chronic and would

14   occur, if at all, only after treatment. The ALJ noted Emison's testimony that he

15   could be fine after the treatment for a couple of days and then feel effects. AR

16   34, 75.

17           The ALJ noted Emison's testimony that he ceased working, not because of

18   disabling symptoms, but because he was laid off in September 2010 prior to be

19   being diagnosed or treated for non-Hodgkin's lymphoma.[8] AR 34, 76.

20           The ALJ found no indication Emison was unable to perform daily activities

21   and household chores, and Emison has not cited any contrary evidence. AR 35.

22           The ALJ's credibility finding is supported by substantial evidence, and this

23   court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing

24   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

25

26           [7] Although not sufficient alone, an ALJ may rely on personal observations
     of a claimant's functioning in "'the overall evaluation of the credibility of the
27   individual's statements.'" *Orn v. Astrue*, 495 F.3d 625, 639-40 (9th Cir. 2007).

28           [8] By contrast, Emison's questionnaire stated that he stopped working due
     to his condition. AR 184.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 26, 2013

*Alicia G. Rosenberg*

_____

ALICIA G. ROSENBERG
United States Magistrate Judge

8